UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: VIDEO GAME ADDICTION
PRODUCTS LIABILITY LITIGATION                                           MDL No. 3109


ORDER DENYING TRANSFER


**Before the Panel:**[*]  Plaintiffs in the five actions listed on Schedule A move under 28 U.S.C. § 1407 to centralize this litigation in the Western District of Missouri or, alternatively, the Eastern District of Arkansas.  Since the filing of the motion, the Panel has been notified of ten related actions.  The cases in this litigation are individual personal injury actions alleging that video game developers, digital app stores, and other technology companies have developed and sold video games and related products with psychologically addictive features for the purpose of causing addiction to video games among minors and young adults.  In total, the fifteen actions in this docket are pending in ten districts.

All responding defendants oppose centralization.[1] If the actions are centralized over their objections, they request the Eastern District of Arkansas or the Northern District of Georgia as transferee district.[2]

On the basis of the papers filed and the hearing session held, we conclude that centralization will not serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation.  Movants rely on broad similarities among the actions concerning the video game industry and defendants' alleged conduct in designing, marketing, selling, and facilitating the use of video game products that, plaintiffs argue, cause prolonged, compulsive game play and,

---

[*] Judge David C. Norton did not participate in the decision of this matter.

[1] Responding defendants are 2KGames Inc., Apple Inc., Activision Blizzard, Inc./Blizzard Entertainment Inc., Another Axiom, Inc., Dell Inc. and Dell Technologies Inc. (together, "Dell"), Electronic Arts Inc., Epic Games Inc., Google LLC, Innersloth LLC, Infinity Ward Inc., Meta Platforms, Inc. ("Meta"), Microsoft Corp., Mojang Studios, Nintendo of America Inc., Raven Software Corp., Rec Room Inc., Roblox Corp., Rockstar North Limited, Rockstar Games Inc., Sledgehammer Games Inc., Sony Interactive Entertainment LLC, Take-Two Interactive Software Inc., Treyarch Corp., Ubisoft Divertissements, Inc. and Ubisoft Entertainment, and Visual Concepts Entertainment Studios.

[2] Defendant Dell also requests that the claims in the *Broussard* related action be excluded from any MDL pursuant to the separation and remand provision of Section 1407(a).

ultimately, addiction through the use of similar features like feedback loops, reward systems, pay-to-win options, and artificial intelligence mechanisms. The differences among the actions, however, are substantial: there is a broad range of games and defendants in each action, with the at-issue games only partially overlapping. For example, the video games at issue in *Dunn* are Battlefield, Call of Duty, Fortnite, and Rainbow Six; the games at issue in *Jiminez* are Fortnite, Minecraft, and Roblox; the games at issue in *Angelilli* are Call of Duty, Fortnite, Roblox, and Grand Theft Auto; and the games at issue in *Glasscock* are Call of Duty, World of Warcraft, and Overwatch.[3] The related actions also involve over 30 different defendants, and many are involved in just one or two actions – e.g., Another Axiom Inc., Banana Analytics, Bluestacks by Now.GG, Dell, Innersloth LLC, Meta, MSI Computer Corp., and VR Chat, Inc.

Plaintiffs attempt to overcome the differences among the products and defendants by asserting that an alleged common conspiracy supports centralization – specifically, that defendants "conspired or acted in concert to addict a generation of young video game players."[4] Indeed, all of the complaints bring a claim for civil conspiracy. But in each action, the alleged conspiracy claim is pled against a different group of defendants and involves different combinations of gaming products. Given the different products and defendants involved in each alleged conspiracy, centralization is not warranted.[5]

Plaintiffs also assert that the number of actions is likely to expand, asserting during oral argument that there would be 10,000 additional actions. But "the mere possibility of additional actions does not support centralization, even where thousands of actions are predicted."[6] We note, however, that our decision to deny centralization here is not based on an insufficient number of actions, but rather the lack of common factual questions in this litigation.

Informal coordination is a practicable alternative to centralization. Plaintiffs in all actions on the motion and seven of the ten potential tag-along actions share counsel and have represented in the briefing that they have coordinated, and will continue to coordinate with, other groups of plaintiffs involved in this litigation. The most frequently-named defendants have

---

[3] Many additional games and defendants are introduced in the related actions that the parties identify as potential tag-along actions, including Gorilla Tag, Capuchin, Rec Room, Among Us, NBA2K, Subway Surfers, Madden 24, and Rocket League.

[4] *See* Pls.' Reply at 11, 14, 16 (J.P.M.L. Apr. 15, 2024).

[5] Proponents of an industry-wide MDL generally have a heavy burden to show that the actions will share sufficient overlap that including them will promote the just and efficient conduct of the litigation. *See, e.g., In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) ("We are typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products.") (quotation omitted). Movants fall far short of meeting that burden here.

[6] *In re Hotel Industry Sex Trafficking Litig (No. II).*, __ F. Supp. 3d __, 2024 WL 1596932, at *2 (J.P.M.L. Apr. 11, 2024) (quoting *In re Hotel Industry Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020)) (internal quotation marks omitted).

national coordinating counsel. At oral argument, their counsel represented that they will coordinate any overlapping discovery that potentially may arise. Additionally, where multiple related actions are pending in a single district or region, the parties and involved courts can make efforts to organize the actions before a single judge, including through transfer under Section 1404(a) as has occurred in the Eastern District of Arkansas.

IT IS THEREFORE ORDERED that the motion for centralization of these actions is denied.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

| Nathaniel M. Gorton | Matthew F. Kennelly |
| Roger T. Benitez | Dale A. Kimball |
| Madeline Cox Arleo | |

IN RE: VIDEO GAME ADDICTION
PRODUCTS LIABILITY LITIGATION                                                   MDL No. 3109

## SCHEDULE A

Eastern District of Arkansas

DUNN, ET AL. v. ACTIVISION BLIZZARD, INC., ET AL., C.A. No. 3:23−00224
JOHNSON, ET AL. v. ACTIVISION BLIZZARD, INC., ET AL., C.A. No. 3:24−00026

Northern District of Illinois

ANGELILLI v. ACTIVISION BLIZZARD, INC., ET AL., C.A. No. 1:23−16566

Southern District of Illinois

JIMINEZ v. MICROSOFT CORPORATION, ET AL., C.A. No. 3:23−03678

Western District of Missouri

GLASSCOCK v. ACTIVISION BLIZZARD, INC., ET AL., C.A. No. 2:24−04036